UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Adrian Patterson,                                         Civil No. 14-2796 (DSD/FLN)

               Petitioner,

    v.                                                    **ORDER AND**
                                                                                         **REPORT AND**
State of Minnesota,                                       **RECOMMENDATION**

               Respondent.

_____

Petitioner, *pro se*.
Matthew Frank, James Early, and Jean Burdorf for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Respondent State of Minnesota's motion to dismiss Petitioner's petition for writ of habeas corpus (ECF No. 11) and Petitioner's motion to appoint counsel (ECF No. 16). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, Petitioner's motion is **DENIED** and the Court recommends that Respondent's motion be **GRANTED**.

### I. FINDINGS OF FACT

Following a December 2009 jury trial, Petitioner Adrian Patterson was convicted of (1) second-degree murder while committing a drive-by shooting, in violation of Minn. Stat. § 609.19, subdiv. 1(2), and (2) drive-by shooting, in violation of Minn. Stat. § 609.66, subdiv. 1e(b). On January 19, 2010, Petitioner was sentenced to 326 months imprisonment. The Minnesota Court of Appeals affirmed Petitioner's convictions on March 15, 2011. *State v. Patterson*, 796 N.W.2d 516 (Minn. Ct. App. 2011). The Minnesota Supreme Court granted discretionary review on one issue and affirmed the court of appeals's decision on April 25, 2012. *State v. Patterson*, 812 N.W.2d 106

(Minn. 2012).

The undersigned accepts the facts of this case as stated by the Minnesota Supreme Court:

The trial court records indicates that shortly after 2 a.m. on November 23, 2003, a three-car chase was in progress in downtown Minneapolis. Patterson and [co-defendant Leroy Paul] were traveling together in one car: Paul was driving and Patterson was sitting in the front passenger seat. They were chasing a car driven by Rashante Artison, who was accompanied by a passenger. Antonio Wilson was driving a third car somewhere behind the other two cars. Leaning out of the passenger window, Patterson began to shoot a gun at Artison's car. Patterson continued to shoot as Paul maneuvered their car so that it was parallel to Artison's car. Upon seeing Patterson shooting, Wilson tried to stop Patterson by shooting a gun towards Patterson, but Wilson's gun jammed after firing one shot. Wilson then drove into the back of the car Paul was driving, causing an accident. After the incident, Patterson got out of the car and walked away. Artison, who had been hit by one of Patterson's shots, managed to drive to the hospital, but eventually died from the gunshot wound.

The subsequent police investigation stalled until December 2008, when the Minneapolis Police Department was contacted by two individuals who provided new information. Following further investigation as a result of this information, Paul and Patterson were indicted on two counts of first-degree murder and two counts of attempted first-degree murder.

At Patterson's 2009 trial, the State's theory of the case was that Artison's murder was caused by an intra-gang conflict that arose following the November 2002 murder of Fred Williamson. On the morning of November 7, 2002, Williamson and Paul had a confrontation outside a café, based on Paul's belief that Williamson had stolen money and drugs from him. Bryan Herron, who was present along with Wilson, broke up the confrontation; then Herron, Wilson, and Williamson left in a car. At some point, Paul pulled up next to their car and shot Williamson, killing him. In retaliation for Paul killing Williamson, Artison attempted to shoot Paul in early November 2003. Paul responded on November 13, 2003—just one week before Artison was killed—by shooting at Artison. Paul was later convicted of killing Williamson and was sentenced to life in prison.

Believing there was a connection between the Williamson and Artison murders and that they were gang related, the State planned to call witnesses who would testify at Patterson's trial about events surrounding the Williamson murder, the subsequent intra-gang conflict that developed, and Artison's murder. Those witnesses included Herron, Wilson, and Jermaine Richardson, each of whom whad been previously represented by [Eric Newmark]. Newmark had also previously represented Paul. As a result, the State's moved to disqualify Newmark from representing Patterson.

2

> Patterson objected and a number of hearings were held on the State's motion. While the motion was pending, Patterson consulted extensively with independent counsel about the potential for conflicts of interest based on Newmarks' past representation of Herron, Wilson, Richardson, and Paul. After consulting with the independent attorney, Patterson was satisfied that there were no actual or potential conflicts of interest, but nevertheless waived his right to conflict-free counsel. But Patterson did not waive his right to move for a mistrial in the event an actual conflict arose during trial.
>
> Despite Patterson's waiver of conflict-free counsel, the trial court granted the State's motion to disqualify Newmark, finding that Newmark's previous representation of Wilson and Herron presented potential conflicts of interest. Patterson eventually retained another attorney as trial counsel. . . . [T]he jury found Patterson guilty of second-degree murder while committing a drive-by shooting and of drive-by shooting.

*Patterson*, 812 N.W.2d at 108–09.

Petitioner appealed his conviction to the Minnesota Court of Appeals, claiming that: (1) he was deprived of his constitutional right to counsel of his choice when the trial court disqualified Newmark; (2) he was deprived of his right to conflict-free counsel because his second attorney, Barry Voss, had a conflict with one of the State's witnesses; (3) the trial court erred in admitting certain gang evidence at his jury trial; and (4) he was improperly sentenced. *See Patterson*, 796 N.W.2d at 520; *see also* Pet. 2, ECF No. 1. The court of appeals affirmed, finding that the trial court did not abuse its discretion in disqualifying Newmark, and that Petitioner waived his right to conflict-free counsel. *See generally Patterson*, 796 N.W.2d at 523–533. The court also determined that the trial court's decision to admit evidence of Petitioner's gang affiliation was not a basis for reversal, and that there was no error in Petitioner's sentencing. *See id.* The Minnesota Supreme Court granted review on the sole issue of whether Patterson was deprived of his right to counsel of choice, and, in an April 25, 2012 opinion, it affirmed the court of appeals' decision. *Patterson*, 812 N.W.2d at 108. Petitioner was represented by an assistant public defender for both appeals.

Petitioner did not appeal his conviction to the U.S. Supreme Court.

On September 5, 2012, Petitioner filed a *pro se* petition for post-conviction relief. Resp. App. 29, ECF No. 13. Petitioner first claimed that the trial court displayed judicial bias by *sua sponte* including lesser-included offenses in its instructions to the jury. *Id.* at 34. Second, Petitioner alleged that he received ineffective assistance from his trial counsel because Mr. Voss waived his omnibus hearing, failed to hire an investigator, and conceded his Petitioner's guilt as an accomplice. *Id.* at 38. Finally, Petitioner asserted that he received ineffective assistance from his appellate counsel because (1) she failed to initiate a post-conviction proceeding alleging that Mr. Voss's performance was deficient, and (2) she failed to seek review of his conviction by the U.S. Supreme Court. *Id.* at 39. The trial court denied the petition, concluding that his claims were without merit. *Id.* at 34–41.

Petitioner appealed this decision *pro se* to the Minnesota Court of Appeals, who affirmed the denial of his petition for post-conviction relief on November 4, 2013. *See Patterson v. State*, No. A13-0274, 2013 WL 5878211 (Minn. Ct. App. Nov. 4, 2013). Petitioner had 30 days from the date of the decision to seek review by the Minnesota Supreme Court. *See* Minn. R. App. P. 117. He did not. On January 5, 2014, however, Petitioner filed a motion for an extension of time to file his petition for review. ECF No. 13 at 4. The Minnesota Supreme Court denied the motion, finding that there was no good cause for the extension. *Id.* at 1–2.

In the instant action, Petitioner raises three issues in support of his petition for habeas relief. First, Petitioner argues that the trial court abused its discretion by including lesser-included offenses in its instructions to the jury. ECF No. 1 at 4. Second, Petitioner argues that his trial counsel provided ineffective assistance by (1) failing to hire an investigator, (2) waiving Petitioner's omnibus hearing, and (3) failing to obtain a waiver for a conflict of interest. *Id.* at 6. Finally,

4

Petitioner claims that his appellate counsel provided ineffective assistance by failing to petition the U.S. Supreme Court for review. *Id.* at 6–7. Respondent now seeks to dismiss the petition because Petitioner failed to exhaust his state court remedies. Mem. in Supp. of Mot. to Dismiss 5, ECF No. 12. In response, Petitioner claims that factors outside of his control caused his failure to exhaust his state court remedies and that it would be a fundamental miscarriage of justice to bar his petition. *See generally* Pet'r's Opp'n Mem, ECF No. 15. Petitioner has also filed a motion to appoint counsel. *See* Mot., ECF No. 16.

## II. CONCLUSIONS OF LAW

**A.    Motion to appoint counsel**

Petitioner has moved this Court to appoint counsel because he cannot afford to retain a private attorney, the matters in this case are complex, he has limited access to the library, and he has no knowledge of the law. ECF No. 16.

Petitioner does not have a constitutional or statutory right to counsel in habeas proceedings. *Polalrd v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994) (citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991)). In considering a motion to appoint counsel, "[t]he trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996).

In this case, the Court finds that neither the facts nor the legal issues raised are so complex as to warrant appointment of counsel. Petitioner, through his previous submissions to the Court in support of his petition, has demonstrated his ability to investigate the legal and factual bases of his

claims. Furthermore, the Court cannot conclude that appointment of counsel would substantially benefit both the Petitioner and the Court, as the Court finds that the issues in this case can be resolved on the record without an evidentiary hearing. Accordingly, the Court determines that the interests of justice do not require that counsel be appointed for Petitioner.

**B.     Motion to dismiss**

   **A.     Legal standard**

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion of state court remedies requirement, a prisoner must "fairly present" his or her claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526 U.S. at 845. When a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Id.* The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that a 'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

   **2.     Analysis**

6

The claims raised in Petitioner's petition are procedurally defaulted. As stated above, after his convictions were affirmed by the Minnesota Supreme Court, Petitioner filed a petition for post-conviction relief in Minnesota district court. In his state court petition, he raised the same issues that he now raises in his federal habeas petition; namely, that (1) the trial court abused its discretion by instruction the jury to a lesser-included offense, (2) his trial counsel's representation was ineffective, and (3) his appellate counsel's representation was ineffective. The trial court denied the petition for post-conviction relief and the court of appeals affirmed, holding that Petitioner's claims were either meritless or barred by *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (holding that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief"). Thereafter, Petitioner failed to timely petition the Minnesota Supreme Court for review of the court of appeals' decision, and the court denied any extension of time to file his appeal. Accordingly, because Petitioner failed to exhaust his state court remedies, his claim is procedurally defaulted. *See Jackson v. Symmes*, No. 09-2946, 2011 WL 1300930, at *10 (D. Minn. Jan. 18, 2011) ("[W]hen a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim . . . has been procedurally defaulted."). Therefore, review of Petitioner's habeas petition is barred unless he can demonstrate either cause for his default and actual prejudice, or that the failure to consider his claims would result in a fundamental miscarriage of justice. *McCall v. Benson*, 114 F.3d 754, 757–58 (8th Cir. 1997) (citing *Coleman*, 501 U.S. at 750).

Petitioner claims that he procedurally defaulted on his claims due to the fact that Mr. Voss was in the process of being disbarred at the time he agreed to represent Petitioner. ECF No. 15 at

7

3. According to Petitioner, it was Mr. Voss's responsibility to appeal the denial of his state court petition for post-conviction relief with the Minnesota Supreme Court. *Id.* at 4–5. However, there is nothing in the record that suggests Petitioner was represented by Mr. Voss at any time while his petition for post-conviction relief was being considered. Indeed, Petitioner's direct appeal of his conviction was handled by an assistant public defender, not Mr. Voss, and all of Petitioner's filings in his post-conviction proceeding were *pro se*. There is no right to counsel in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Accordingly, Petitioner's attempt to blame Mr. Voss for his failure to appeal the denial of his petition for post-conviction relief is without merit.

Petitioner additionally claims that his lack of knowledge of the law caused his procedural default. *See* ECF No. 1 at 7. However, the Eighth Circuit has expressly held that a prisoner's *pro se* status and ignorance of the law are not sufficient causes for failing to pursue available state court remedies. *See Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988). Consequently, Petitioner's lack of legal knowledge does not excuse his procedural default.

Finally, Petitioner appears to allege that he is actually innocent of the crimes for which he was convicted, and it would therefore be a fundamental miscarriage of justice if his habeas claims were barred. *See* ECF No. 15 at 7–8. As stated above, the "fundamental miscarriage of justice" exception requires a showing, *based on new evidence*, that a constitutional violation has probably resulted in the conviction of a person who is actually innocent. *Meng Vang v. Fabian*, No. 11-cv-60, 2012 WL 566945, at *3 (citing *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995)). Petitioner, however, has not identified any new evidence—either in his Petition or opposition memorandum—that would trigger the fundamental miscarriage of justice exception.

Accordingly, the Court concludes that Petitioner's claims must be dismissed because they are unexhausted and procedurally defaulted. There is no evidence before this Court to suggest cause and actual prejudice, or a fundamental miscarriage of justice, to overcome the procedural default of these claims.

### III. ORDER AND RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's motion to appoint counsel (ECF No. 16) is **DENIED**. It is additionally **RECOMMENDED** that Respondent's motion dismiss (ECF No. 11) be **GRANTED** and Petitioner's Petition be **DISMISSED WITH PREJUDICE**.

DATED: July 16, 2015  *s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 31, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.